[NOT FOR PUBLICATION–NOT TO BE CITED AS PRECEDENT]

# United States Court of Appeals
## For the First Circuit

---

No. 00-1747

UNITED STATES,

Plaintiff, Appellee,

v.

ONE PARCEL OF LAND, PARCELA 22, BARRIO LLANOS COSTA,
CABO ROJO, P.R.,

Defendant,

JORGE L. SUAREZ-MAYA,

Claimant, Appellant,

NAYDA FRANQUI; MUNICIPAL TAX COLLECTION CENTER (CRIM),

Claimants.

---

APPEAL FROM THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF PUERTO RICO

[Hon. Carmen Consuelo Cerezo, U.S. District Judge]
[Hon. Robert J. Ward,* U.S. District Judge]

---

Before

Lipez, Circuit Judge,
Campbell and Cyr, Senior Circuit Judges.

————————————————

Jorge L. Suarez-Maya, on briefs pro se.
Guillermo Gil, United States Attorney, Miguel A. Fernandez, Assistant United States Attorney, and Jose Javier Santos Mimoso, Assistant United States Attorney, on brief for appellee.

————————————————

August 23, 2001

————————————————

_____

*Of the Southern District of New York, sitting by designation.

**Per Curiam**.  Pro se claimant Jorge Suárez-Maya appeals a district court judgment that orders the forfeiture of certain property to the government as the "proceeds" of drug transactions, see 21 U.S.C. § 881(a)(6), and requires the government to pay claimant one third of the forfeiture sale's proceeds.  We have thoroughly reviewed the record and the parties' briefs on appeal.  We vacate the forfeiture judgment and remand for further proceedings because we conclude that claimant did not have fair notice that his trial would begin less than twenty-four hours after he was transferred to Puerto Rico from the federal prison in Allenwood, PA.  We address the parties' salient arguments.

## Jurisdiction

We reject the parties's suggestion that this court lacks jurisdiction over the instant appeal because the property damage claim alleged in claimant's "*Moción En Demanda*", Docket #97, remained pending when the district court entered its forfeiture judgment on March 24, 2000. This claim was not pending because it required no ruling. The "*Moción En Demanda*" constituted an attempt to cure the lack-of-presentment defect that the district court identified

-3-

when it dismissed claimant's property damage claim under the Federal Tort Claims Act (FTCA) and granted the government partial summary judgment.[1]  Claimant had no right to bring suit on his property damage claim when he filed his *"Moción en Demanda"* because six months had not yet elapsed from the date of presentment suggested by his Standard Form 95 and the USMS had not administratively denied his claim.  Moreover, claimant never served his *"Moción en Demanda"* on opposing counsel.  Thus, the district court was required to do no more than "note" claimant's *"Moción En Demanda,"* as it did in its January 29, 1999 order, Docket #104.

We recognize that the trial judge purported to resurrect claimant's *"Moción En Demanda"* at the May 3, 2000 hearing.  This action was a nullity.  By that time, the district court had lost jurisdiction over this case because the claimant had filed a valid notice of appeal, Docket #120, on February 28, 2000.  It is clear that claimant filed this notice to appeal from the decision that the district court

---

[1]  Claimant's *"Moción en Demanda"* included a Standard Form 95 by which claimant purported to present his property damage claim to the United States Marshal Service (USMS) in Hato Rey. Claimant obviously did this in response to the district court's order that dismissed his property damage claim based on claimant's failure to satisfy the FTCA's presentment requirement.  See 28 U.S.C. § 2675(a).

-4-

announced at the February 17, 2000 trial.  See Becker v. Montgomery, 121 S.Ct. 1801, 1807 (2001).  The district court erred by failing to treat this document as a notice of appeal.  See, e.g., Hyche v. Christensen, 170 F.3d 769, 770 (7th Cir. 1999), overruled on other grounds by Lee v. Clinton, 209 F.3d 1025, 1027 (7th Cir. 2000); Dickerson v. McClellan, 37 F.3d 251, 252 (6th Cir. 1994); 20 Moore's Federal Practice, §303.32[2][a][i] (3d ed. 1997).  This was not a case in which the claimant was trying to appeal an obviously unappealable order.  Compare United States v. Mala, 7 F.3d 1058, 1061 (1st Cir. 1993).  Rather, this was a case in which the claimant promptly filed a notice of appeal from rulings announced from the bench, as contemplated by Fed. R. App. P. 4(a)(2)("a notice of appeal filed after the court announces a decision or order but before the entry of judgment ... shall be treated as if filed after such entry and on the date thereof[]").  The district court clerk should have recognized that although claimant filed his notice of appeal before judgment entered on March 24, 2000, the notice ripened into effect on that date under Fed. R. App. P. 4(a)(2).  At that point, the clerk had the obligation to forward the notice of appeal and the docket entries to this court under Fed. R. App. P. 3(d)(1).

Because a valid notice of appeal divests the district court of jurisdiction over matters related to the appeal, see, e.g., Brandt v. Wand Partners, 242 F.3d 6, 14 (1st Cir. 2001), the district court lacked jurisdiction to reopen the proceedings on the merits on May 3, 2000. Thus, orders issued with respect to claimant's property damage claim from that point on were a nullity. Accordingly, they do not defeat this court's jurisdiction.[2]

**The Merits**

On appeal, claimant argues that the government failed to establish probable cause for the forfeiture.[3] Alternatively, claimant contends that the district court deprived him of a fair opportunity to prepare and present his defense by requiring him to proceed with trial when he had

---

[2] We pause to note that claimant's *"Moción En Demanda"* is in Spanish, as are a host of other documents that claimant filed in the district court. Claimant has failed to supply this court with English translations of his Spanish documents as required by Local Rule 30(d). Ordinarily, we would hold that claimant has waived any claim that is based on untranslated documents. See, e.g., Ramos-Baez v. Bossolo-Lopez, 240 F.3d 92, 93-94 (1st Cir. 2001); Lopez-Carrasquillo v. Rubianes, 230 F.3d 409, 413, 414 & n. 3 (1st Cir. 2000); Gonzales-Morales v. Hernandez-Arencibia, 221 F.3d 45, 50 n. 4 (1st Cir. 2000). Here, however, the record contains numerous documents that describe the critical records in English. Accordingly, we have relied on these descriptions and hold that claimant has waived any claims that call for a different translation.

[3] We reject the government's suggestion that claimant did not preserve this issue.

not been transferred to Puerto Rico in time to attend his final pretrial conference and further was not given notice that his trial would begin on February 17, 2000. Claimant's first contention lacks merit, but we are compelled to agree with his second point.

We conclude that the government has established probable cause for the forfeiture. To be sure, neither the state nor the federal drug offenses identified in the verified forfeiture complaint could reasonably be thought to have yielded the requisite "proceeds." This is because these offenses were unsuccessful and too remote in time to the claimant's purchase of the defendant property to be reasonably thought to have funded it. However, the evidence at claimant's federal trial disclosed that claimant admitted his culpability in ferrying 16 kilograms of cocaine from Mona Island to the main island of Puerto Rico and that he knew where an additional 250-270 kilograms was stashed on Mona Island. See United States v. Ramirez-Ferrer, 82 F.3d 1149 (1st Cir. 1996), 82 F.3d 1131 (1st Cir. 1996)(en banc), United States v. Ramirez-Ferrer, 1995 WESTLAW 237041 (1st Cir. 1995). It is reasonable to conclude that someone entrusted with this amount of cocaine and knowledge was not committing his first drug offense in ten years (i.e., roughly

-7-

the amount of time between claimant's state and federal offenses). Rather, these circumstances suggest that claimant probably engaged in additional drug crimes that could have generated "proceeds" that at least partially funded his purchase of the defendant property.

Nevertheless, we are compelled to vacate and remand because the record discloses that claimant did not have fair notice that his trial would begin less than 24 hours after he arrived in Puerto Rico. It is undisputed that claimant had notice of the district court order that first scheduled his trial for March 15, 2000. Claimant further acknowledged that he had the court's February 1, 2000 order, which the district court construed as rescheduling claimant's trial for sometime between February 14-29, 2000.[4] But the February 1st order did not actually reschedule claimant's trial. Rather, the final sentence of the order states, "The non-jury trial, currently scheduled for MARCH 15, 2000 *will be RESET for the period between FEBRUARY 14-29, 2000 by separate order.*" (emphasis supplied). The remainder of the February 1st order denied claimant's request for discovery, allowed claimant's

---

[4] The February 1, 2000 order, Docket #115, was signed by Judge Cerezo on January 31, 2000. Because the order was not entered until the following day, we refer to Docket #115 as the "February 1st" order.

motion to be transferred to Puerto Rico so that he could prepare for trial, ordered that claimant be transferred to Puerto Rico "forthwith," and assigned the trial to a visiting judge. The February 1st order also scheduled a status conference for February 11, 2000.

We think it clear that Judge Cerezo ordered claimant to be transferred to Puerto Rico "forthwith" so that he could attend the February 11th conference and have a modest amount of time in Puerto Rico to prepare for trial. But claimant was not transferred to Puerto Rico in time to attend the February 11th conference. Claimant's attendance at this conference was required by Fed. R. Civ. P. 16(d)(providing that the final pretrial conference, "<u>shall</u> be attended by ... any unrepresented parties." (emphasis supplied)).[5] In accordance with the February 1st order, the trial judge issued a further scheduling order at the February 11th conference which advised the Assistant United States Attorney (AUSA) "to be ready to go to trial any day after February 16, 2000." There is no evidence that claimant was ever given notice of this third scheduling order. Thus, the record discloses that claimant arrived in Puerto Rico on the

---

[5] Because of its close proximity to the trial, the February 11th conference constituted a final pretrial conference that claimant had the right to attend under Fed. R. Civ. P. 16(d).

evening of February 16th and that he was brought to court for trial first thing in the morning on February 17th. But having missed the final pretrial conference, and lacking notice of the events that transpired there, claimant reasonably believed that his case remained scheduled for trial on March 15th.

The trial judge overlooked the fact that the February 1st order did not actually reschedule the trial; rather, it stated that a separate order would issue that would reschedule the trial. The judge also overlooked the fact that because claimant had not been transferred to Puerto Rico in time to attend the February 11th conference and was not notified of the events that transpired there, he had no notice of the order that the judge issued at the conference which resulted in the case being called for trial less than 24 hours after claimant arrived in Puerto Rico. Claimant was prejudiced by this chain of events. Had he been transferred to Puerto Rico in time to attend the February 11th conference, he would have had three days to line up his witnesses and documents, for trial was then scheduled for February 15th. As it was, claimant had less than 24 hours. The trial judge recognized that claimant was at a disadvantage and endeavored to ameliorate the situation by

allowing a key witness, attorney Velez Rivera, to "testify" by speakerphone. This was not sufficient. Attorney Velez Rivera was the only witness whom the claimant identified who appeared to have personal knowledge of many of the circumstances surrounding claimant's sale of his other property. Claimant was entitled to have a fair opportunity to bring attorney Velez Rivera, and any others witnesses who could offer admissible evidence to support his claims, into court to testify.

In view of the foregoing, we think that the trial judge abused his discretion in concluding that claimant had fair notice of the trial date from the court's February 1, 2000 order. See, e.g., Casa Maria Hogar Geriatrico, Inc. v. Rivera-Santis, 38 F.3d 615, 618 (1st Cir. 1994). We reject the government's suggestion that the claimant was not prejudiced by the foregoing course of events because he was given a second opportunity to present evidence at the May 3, 2000 hearing. For one thing, the notice that the court issued in scheduling that hearing described it as a hearing on claimant's motion to stay the forfeiture sale. It is not clear that claimant was told that he was going to get a second bite at the apple. More importantly, by that time, the court had no jurisdiction to offer such a bite, because

-11-

the claimant had filed a valid notice of appeal. Thus, the May 3rd hearing was not a sufficient cure for the inadequate notice that preceded the trial.

Since claimant unquestionably suffered prejudice, considerations of basic fairness dictate that we grant a new trial. Moreover, we are greatly concerned that the record on appeal fails to indicate that the government ever provided the district court with an explanation for its sixteen-day delay in returning claimant to Puerto Rico (to enable him to prepare for trial), notwithstanding the explicit directive in the district court's February 1st order that the government do so "forthwith." Although the record obliquely suggests that claimant may have required hospitalization during this time, it was incumbent upon the government to account for the seemingly inordinate delay, especially since its deferment deprived claimant of the right to attend the pivotal February 11 status conference.

Where the claimant in a civil forfeiture proceeding is in federal custody and has not been made available in due course for trial, the district court should determine the reason for the tardy transfer. Should the district court determine that there was government mischief or manipulation, or that the explanation proffered for the delay was

unsubstantiated or manifestly pretextual, it must exercise its discretion by imposing a sanction commensurate with the seriousness of the misfeasance. Any such sanction may include the dismissal, with prejudice, of the civil forfeiture complaint should the circumstances warrant. See Fernandez v. Leonard, 963 F.2d 459, 462-63 (1st Cir. 1992)(noting that dismissal is potential sanction for "fraud on the court," defined to include any "unconscionable scheme calculated to ... unfairly hamper[] the presentation of the opposing party's claim or defense.")(citation omitted). Of course, it is for the district court to determine in the first instance what, if any, sanction may be appropriate in the circumstances.

The district court should proceed with its retrial of the forfeiture action only after it has made an explicit ruling on the government's explanation for the delay in transfer, and it has determined in its discretion that the ultimate sanction of dismissal is unwarranted in the circumstances. At that juncture, the district court should provide claimant adequate notice of the retrial date, as well as a reasonable time and opportunity to prepare for the retrial, to arrange for the court appearances of all material witnesses, and for the translation of important documents

(e.g., deeds of sale) which purportedly substantiate claimant's defense.

While we need not reach claimant's remaining arguments, we add the following comments to clarify certain matters which could arise on remand should the district court determine that dismissal of the forfeiture complaint is not warranted. First, claimant cannot benefit from the Civil Asset Forfeiture Reform Act of 2000 because this law applies only to cases that were commenced on or after August 23, 2000. See, e.g., United States v. Real Property Located at 221 Dana Avenue, Hyde Park, MA, No. 00-1665, slip op. at 2, n.1 (1st Cir. Aug. 17, 2001); United States v. Quintana-Aguayo, 235 F.3d 682, 687 n.9 (1st Cir. 2000). Under the law that governs this case, the government may use reliable hearsay to satisfy its burden of proving probable cause, but the claimant cannot rely on hearsay to rebut the government's showing. See United States v. One Lot of Currency ($68,000), 927 F.2d 30, 32 (1st Cir. 1991)(forfeiture claimant "must produce evidence which would be admissible at trial" in opposing the government's motion for summary judgment). Claimant must do more than proffer possible innocent (i.e., non-drug related) sources of income to rebut the government's case. See United States v. Parcels of Property, 9 F.3d 1000,

-14-

1005 (1st Cir. 1993). Rather, claimant must prove that non-drug money funded his purchase of the defendant property by a preponderance of the evidence. See United States v. Parcels of Land, 903 F.2d 36, 38 (1st Cir. 1990).[6]

Second, the district court did not err by disregarding the alleged legitimate sources of income that claimant identified at his trial and in his prior deposition. Absent evidence corroborating same, the district court was not obliged to credit claimant's trial testimony regarding his alleged sale of a boat. Claimant also is under the mistaken impression that the entire transcript of his deposition is part of the record. It is not. It is the responsibility of the claimant, not the district court, to identify evidence in support of his claims. See Ruiz Rivera v. Riley, 209 F.3d 24, 27-28 & n.2 (1st Cir. 2000); Local Rule 311.12.[7] The district court also did not err by relying

---

[6] Although we need not reach the issue, we note that the testimony of Mrs. Sor Carrera Rodriguez regarding claimant's alleged bolíta winnings was hearsay; therefore it added nothing to claimant's case.

[7] On appeal, claimant argues that he earned between $4000-$5000 every three months from growing pumpkins and watermelons on his property. However, claimant failed to bring the page from his deposition that supports this claim to the attention of the district court. Claimant's motion to take judicial notice is denied insofar as it seeks to add this page to the record on appeal. The remaining items addressed in that motion are part of the record which we have reviewed; therefore there is no need

-15-

on the fact that claimant did not file tax returns in reaching its decision. The fact that claimant's alleged income sources are not corroborated by tax returns is relevant even if claimant's failure to file tax returns did not violate Puerto Rico law (a matter on which we express no opinion).[8] Finally, the district court did not err in its treatment of Magistrate-Judge Delgado-Colon's June 17, 1998 report.

In view of the foregoing, the judgment of the district court is <u>vacated</u> and the case is <u>remanded</u> for further

proceedings consistent with this opinion. <u>See</u> Local Rule 27(c).

---

for claimant to seek judicial notice of these documents. The suggestion in claimant's reply brief that his October 27, 1998 complaint, Docket #98, remains pending is waived because claimant did not present this claim clearly in his opening brief. <u>See</u>, <u>e.g.</u>, <u>United States</u> v. <u>Coviello</u>, 225 F.3d 54, 70 n.10 (1st Cir. 2000), <u>cert.</u> <u>denied</u>, 121 S. Ct. 839 (2001).

[8] The record of the May 3, 2000 hearing indicates that the trial judge gave claimant the benefit of the doubt on this issue. We assume that this means that he credited claimant's contention that independent fisherman are not required to file tax returns in Puerto Rico. Even if this is so, it does not help claimant's case. If claimant fails to corroborate his claims regarding the non-drug related sources of income that he has identified, the district court may rely on this fact on remand.